IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTWAN THOMAS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3564 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Antwan Thomas, a state inmate proceeding *pro se* and *in forma pauperis*, seeks section 2254 habeas relief challenging his state felony conviction for aggravated robbery. Respondent filed a motion for summary judgment (Docket Entry No. 15), with a copy of the state court records. Petitioner filed a response. (Docket Entry No. 18.)

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action.

## I. PROCEDURAL BACKGROUND

A jury found petitioner guilty of aggravated robbery under cause number 14,985 in the 278th District Court of Grimes County, Texas. The trial court sentenced him to thirty years confinement. The judgment was modified on direct appeal to reflect sentencing by the trial court, and, as modified, was affirmed under *Anders v. California*, 386 U.S. 738 (1967). *Thomas v. State*, No. 11-03-00194-CR (Tex. App. – Eastland 2005, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused discretionary

review. *Thomas v. State*, PDR No. 1072-05. The Texas Court of Criminal Appeals denied

habeas relief without a written order on August 30, 2006. *Ex parte Thomas*, No. 65,521-01.

Petitioner raises the following grounds for federal habeas relief:

(1)     insufficiency of the evidence;

(2)     an invalid or defective indictment;

(3)     ineffective assistance of trial counsel;

(4)     ineffective assistance of appellate counsel;

(5)     prosecutorial misconduct; and

(6)     trial court error.

Respondent argues that these grounds fail as a matter of law.

## II.   THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief

cannot be granted on legal issues adjudicated on the merits in state court unless the state

court adjudication was contrary to clearly established federal law as determined by the

Supreme Court, or involved an unreasonable application of clearly established federal law

as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28

U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies

a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a

set of facts materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

In the instant case, the state trial court did not enter findings on collateral review. The Texas Court of Criminal Appeals denied habeas relief without a written order. This constitutes an adjudication on the merits of petitioner's claims for purposes of the AEDPA deferential standard of review. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999).

### III.   INSUFFICIENCY OF THE EVIDENCE

Petitioner challenges the sufficiency of the evidence.  Insufficiency of the evidence can support a claim for federal habeas relief only if the evidence, when viewed in the light most favorable to the State, is such that no reasonable fact finder could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000).  Under the *Jackson* standard, it is the jury's duty to determine the credibility of the witnesses and to resolve the conflicts in the evidence.

In his post-*Anders* brief filed *pro se* on direct appeal, petitioner claimed the evidence was insufficient to support aggravated robbery and that the State's witnesses gave conflicting, inconsistent testimony.  The state court of appeals rejected his arguments and found that, "The record reflects that the victim identified appellant as the man who robbed him at gunpoint."  *Thomas v. State*, No. 11-03-00194-CR (Tex. App. – Eastland, 2005, pet. ref'd).  Although respondent contends that petitioner raised only factual sufficiency challenges to the evidence on direct and collateral appeal, the Court will presume, in the interest of justice and in light of petitioner's unclear pleadings, that petitioner raised and exhausted a legal sufficiency challenge to the evidence under *Jackson*.

*Jackson* requires this Court to review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  443 U.S. at 319.  The trial court instructed the jury

as to petitioner's liability for aggravated robbery both as a principal and under the law of parties. Clerk's Record, p. 111. Under state law, a person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property of another, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN. CODE § 29.02(a)(2). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." *Id.*, § 31.03(a). The offense of robbery is aggravated if the person commits any of the aggravating factors enumerated in section 29.03 of the Penal Code, including using or exhibiting a deadly weapon. *Id.*, § 29.03(a)(2).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE § 7.01(a). Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person's commission of the offense. *Id.*, § 7.02(a)(2). In determining whether the accused participated as a party, the fact finder may look to events occurring before, during, and after the commission of the offense, and may rely on the actions of the defendant which show an understanding and common design to do the prohibited act. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). While the presence of an accused at the scene of an offense is not alone sufficient to support a

conviction, it is a circumstance tending to prove guilt, which, when combined with other facts, may suffice to show that the accused was a participant. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).

The record shows that on November 9, 2002, complainant Glenn Jolivette met Lena Romero at a neighborhood convenience store. Jolivette testified that Romero told him that her sister needed money for utility bills. R.R., Vol. II, p. 68. Romero drove Jolivette to an apartment complex, where they were approached by a black man Jolivette identified in court as petitioner. *Id.*, pp. 76-79. He testified that petitioner ordered him out of the car while another black man pointed a pistol at him. Petitioner pushed Jolivette down on the ground and took his wallet and two cell phones. *Id.*, pp. 80-81. The two black men then fled. *Id.*, p. 85. Jolivette later identified petitioner and Carlton Bennett from a police photo spread as the two assailants. *Id.*, pp. 86-88. Jolivette described the gun as a solid black pistol, and specifically stated that it was not a B-B gun. *Id.*, pp. 82-83.

Grimes County Sheriff's Department Investigator John Wren testified that he was familiar with Romero, petitioner, and Bennett, and that Bennett was the father of Romero's child and an acquaintance and former classmate of petitioner. *Id.*, p. 101. Bennett's finger and palm prints were found on the driver's side door window of Romero's vehicle. *Id.*, p. 106. Wren testified that Romero later told him that Bennett and petitioner were involved in the robbery. *Id.*, pp. 107-08. Bennett admitted to Wren "some involvement" in the robbery, *id.*, pp. 108-09, but told him that it was petitioner who had possession of the gun. *Id.*, pp.

6

114-15. Wren testified that, contrary to Bennett's statement, Romero, petitioner, and Jolivette all stated that Bennett had held the gun. *Id.*

In his written statement to police, petitioner stated that on the evening of the robbery, Romero and Bennett invited him to participate in a cocaine purchase. Petitioner agreed, and Romero drove all three participants to an apartment complex. R.R., Vol. II, pp. 123-24. Romero told petitioner that a "dude" she knew had $2,000.00 cash, and they were going to rob him. Romero left petitioner and Bennett at the apartment complex and returned a short time later with Jolivette. Petitioner stated that as he walked up to the car, Bennett appeared with a gun, pulled Jolivette from the car, and ordered him to the ground. *Id.*, p. 125. Bennett told petitioner to take Jolivette's property. Petitioner stated he was "shocked" and "scared to death" because Bennett had the gun, and followed Bennett's order to take the property. *Id.* Petitioner's trial testimony essentially recounted his written statement. He added that Romero and Bennett shared the proceeds of the robbery, and that he did not report the robbery because Bennett had a gun and had threatened him. *Id.*, Vol III, pp. 5-12.

Investigator Wren testified that jail officials confiscated a handwritten note from Bennett's jail cell, addressed to Bennett by his nickname, "Dot." *Id.*, Vol. II, pp. 127-28. The author asked Bennett to "take this case for me," to "tell them when they ask you that I didn't know what was going down[,]" and to "[j]ust say ya'll picked me up to go buy some beer because I had money." *Id.*, p. 130; State's Exhibit 7. The author promised that if Bennett would "do that for real, man[,]" he would "look out for you all the way. I ain't gone

[sic] turn my back on you. You know, we ride forever, man." *Id.* Petitioner denied writing the note, *id.*, Vol. III, p. 11, but admitted to writing other jail notes urging Dot to "take the case" and promising that he would "look out for you all the way man." *Id.*, p. 17; State's Exhibits 8, 9. Petitioner testified that State's Exhibits 8 and 9 were nothing more than pleas for Bennett to tell the truth about what happened. *Id.*, p. 17.

Petitioner argues that the evidence is insufficient to support the aggravated robbery conviction because no one testified at trial that he held the gun, and because his participation in the robbery was, at most, limited to taking Jolivette's personal property while Bennett held the gun. Stated simply, petitioner claims that the evidence supports his guilt of simple, not aggravated, robbery. Petitioner is incorrect. Because the jury was charged on the law of parties, it could find petitioner guilty of aggravated robbery if it found he "solicited, encouraged, directed, aided, or attempted to aid CARTON BENNETT in the commission of the offense[.]" Clerk's Record, p. 111 (original capitalization). Even assuming that the evidence uniformly showed only Bennett as the gunman, petitioner could be found guilty of aggravated robbery under the law of parties.

Petitioner then argues that, even assuming application of the law of parties, police found only a B-B gun with Bennett's fingerprints on it, which they located at his grandmother's house. No gun matching that described by Jolivette was recovered. However, Jolivette testified that the gun used during the robbery was not a B-B gun. Petitioner himself testified that Bennett used a gun during the incident, which left him "scared to death."

8

Having carefully reviewed the evidence in the light most favorable to the verdict, this Court concludes that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Respondent is entitled to summary judgment dismissing petitioner's claim of insufficient evidence.

## IV. INVALID OR DEFECTIVE INDICTMENT

Petitioner asserts that the indictment was legally invalid or defective because:

(1)     the State failed to prove all elements of the indictment;

(2)     the State amended the indictment without the grand jury's knowledge or consent; and

(3)     the State did not inform petitioner of the amended indictment to allow him opportunity to raise objections or challenges.

Petitioner's argument under subpart (1) is a challenge to the sufficiency of the evidence, not to the indictment itself. Petitioner's challenge to the sufficiency of the evidence is discussed under Section VI, *infra*.

The sufficiency of a state indictment is not a matter for federal habeas review unless the indictment was so defective that the convicting court had no jurisdiction to hear the case. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994). The question is foreclosed to federal habeas review if the sufficiency of the indictment was squarely presented to the highest court of the state and that court held that the trial court had jurisdiction over the case. *Millard v. Lynaugh,* 810 F.2d 1403, 1407 (5th Cir. 1987). In the instant case, petitioner's challenge to the sufficiency of the indictment was

squarely presented to, and rejected by, the Texas Court of Criminal Appeals on collateral review. Accordingly, this claim is foreclosed to federal habeas review by this Court.

Petitioner fares no better under his argument that the indictment was amended without the grand jury's involvement. Texas law authorizes the State to amend an indictment prior to trial. *See* arts. 28.10(a), 28.11, TEX. CODE CRIM. PROC. To the extent petitioner claims that his state law rights were violated, he fails to raise an issue of federal constitutional dimension. This Court does not review a state prisoner's federal habeas corpus petition to determine whether the state courts correctly construed and applied state law; federal habeas relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Nor would petitioner prevail under an analogous claim of a federal constitutional violation, as it is well-settled that the federal guarantee of a grand jury indictment has not been applied to the states through the Fourteenth Amendment. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Brown v. Wainwright*, 576 F.2d 1148, 1149 (5th Cir. 1978).

Petitioner further claims that he was denied notice and an opportunity to object to the amended indictment. Under Texas Code of Criminal Procedure article. 28.10(a),

> After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

In this instance, the record reflects that the State filed its motion to amend the indictment on January 23, 2003, with service on counsel for petitioner. Clerk's Record at 10. The record

10

is unclear as to when the amended indictment itself was filed, but no objections to the motion to amend appear of record. Petitioner fails to argue or show that his counsel did not receive the amended indictment in a timely manner, or that viable objections to the amendment existed. Any violation of the ten-day notice rule is a matter of state law that entitled petitioner to no habeas relief. *See Estelle v. McGuire*, 502 U.S. at 67-68. To any extent petitioner complains that the State unlawfully added enhancement paragraphs to the indictment, the State informed the trial court that there were no enhancement allegations. R.R., Vol. IV, p. 4. Petitioner's prior convictions were admitted as punishment evidence. *Id.*

Petitioner fails to show that the state court's denial of habeas relief was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on these issues of an invalid or defective indictment.

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient

11

performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside a criminal judgment if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner raises the following instances of ineffective assistance of counsel:

(1)  failure to object to false information in the indictment and PSI report;

(2)  failure to investigate, object to hearsay evidence of, and attack credibility of State's witnesses regarding the State's Exhibit 7; and

(3)  changed a "vital legal document" without petitioner's knowledge or consent.

Each alleged instance of ineffective assistance is discussed separately below.

(1)  <u>False Information</u>

Petitioner complains that counsel failed to object to the indictment which falsely charged him as principal in the aggravated robbery. In support, petitioner alleges that it was Bennett who held the gun. In like manner, petitioner argues that counsel failed to object to allegations in the PSI report that he, not Bennett, was the gunman. Petitioner states that because of these misstatements and errors, he was found guilty of and punished for aggravated robbery instead of simple robbery.

Petitioner's arguments are without merit. It is well-settled under Texas state law that law of parties need not be set out in the indictment. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The jury was instructed and charged on the law of parties at trial. Petitioner does not demonstrate that, had trial counsel raised a pretrial objection to the "false" aggravated robbery charge in the indictment, the objection would have been granted and the aggravated robbery charge against him dismissed. Effective assistance of counsel does not require counsel to raise futile objections, and neither deficient performance nor prejudice is shown. *See Wood v. Quarterman*, 503 F.3d 308 (5th Cir. 2007). Petitioner fails

to show that the state court's denial of habeas relief on this issue was contrary to or involved an unreasonable application of *Strickland* or other clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05.

Petitioner also complains that the PSI report falsely reported that, "The defendant held the victim at gunpoint and proceeded to steal his possessions." *See* Clerk's Record at 81. Under "State's Version," however, the PSI reports that Jolivette got on the ground because of "the presentation of a firearm" during the robbery. The identity of the person presenting the firearm was not stated. At the sentence hearing the State asked the trial court "to remember the evidence in this case," R.R., Vol. IV, p. 7, and argued that the evidence showed either that petitioner himself wielded the firearm or that he acted with the person holding the firearm. *Id.*, pp. 8-9. Defense counsel argued that petitioner was not the gunman. *Id.*, p. 8. The record clearly shows that the trial court was apprised of the conflicting evidence.

In finding petitioner guilty of aggravated robbery, the jury was not required to disclose whether it found him guilty as the principal or under the law of parties. As the record does not conclusively exclude petitioner as the gunman, it does not support petitioner's argument that the PSI report statement was false. Accordingly, petitioner does not show that counsel was deficient in failing to object to the PSI report statement. Regardless, trial counsel reminded the trial court at the sentencing hearing that none of the State's trial witnesses had pointed to petitioner as being the gunman. *Id.*, pp. 7-8. Given the instant jury charge, it

14

cannot be found that, but for counsel's failure to object to the PSI report statement, there is a reasonable probability that the result of the trial would have been different or that a lower punishment would have been imposed.

Neither deficient performance nor prejudice is shown. Petitioner fails to show that the state court's denial of habeas relief on this issue was contrary to or involved an unreasonable application of *Strickland* or other clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on this issue of ineffective assistance of counsel.

(2)    The State's Exhibit 7

At trial, the State introduced into evidence State's Exhibit 7, a handwritten note found by jail officials in Bennett's cell. The note, referring to Bennett by his nickname, "Dot," was admitted and read into evidence, as follows:

> Say, Dot, gone [sic] and take this case for me. I know that you did not have anything to do with this. I don't want to go back to TDC. Say, Dot, they have the wrong gun I used to get that dude with. I throwed [sic] it in the Brazos river. They got a gun from Grandma's house with your fingerprint on it. It was a B-B gun. Say gone [sic] take this case for me. I will put money on your books. I promise man. You know, we ride forever. Do that, man. Lena [Romero] thought you had the gun but I really had it. She wrote a statement and said that you had it. That bitch lied on you. Say they did a lineup and the dude remember [sic] my face. Say Dot, do that for me, take this case. This is your first time ever been locked up. They will give you two or three years TDC and then you will come up for parole fast. Say look out for me. Say I got to go to trial on March 14th. So they probable gone [sic] call you over there, too. You got to tell them when they ask you that I didn't know what was going down. I was just there to put in on some beer and [stuff]. That's all I was there for. Tell them that I didn't know the other [stuff] was going down. Say, do that for real, man. I'm [sic] look out for you all the way. I ain't gone [sic]

> turn my back on you.  You know, we ride forever, man.  When I was [sic] get
> these papers I'm a show you the dude said Lena set the whole thing up and she
> went to the laws first.  But Dot, look out for me, man.  Just say ya'll picked me
> up to go buy some beer because I had money.

R.R., Vol. II, p. 129.

Petitioner admitted writing other notes found in Bennett's cell, such as State's

Exhibits 8 and 9, but denied writing State's Exhibit 7.  He complains that trial counsel failed

to object to State's Exhibit 7 as hearsay or test the credibility of the State's witnesses and

evidence regarding the exhibit, and that but for such errors, the result of the trial would have

been different.

The record shows that when the State offered State's Exhibit 7 into evidence, trial

counsel objected that "the statements are not supported by any kind –."  The trial court

stopped counsel at that point and called the parties forward for a bench conference.  R.R.,

Vol. II, p. 128.  Following the conference, the trial court orally instructed the jury as follows:

> Ladies and gentlemen of the jury, I am going to admit Exhibit No. 7 and you
> will determine by comparing it to Exhibit No. 4, State's Exhibit No. 4, as to
> whether or not the handwriting in Exhibit No. 7 is the same as the handwriting
> in Exhibit No. 4.  If you determine that it is then you may use Exhibit No. 7 as
> evidence, otherwise, you will not consider it for any purpose.

*Id.*, pp. 128-29.  State's Exhibit 4 was petitioner's five-page handwritten statement, which

had been admitted into evidence at an earlier point during trial.

The procedure utilized by the trial court for handwriting authentication by the jury is

allowed under Texas Code of Criminal Procedure article 38.27, which provides that, "It is

competent to give evidence of handwriting by comparison, made by experts or by the jury.

16

Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath."[1]  The inculpatory statements appearing in State's Exhibit 7 would constitute admissible statements against interest under Rule 803(24), Texas Rules of Evidence.  To the extent petitioner alleges that trial counsel failed to test the credibility of the State's witnesses and evidence regarding Exhibit 7, petitioner fails to set forth any viable objections, line of questioning, or investigation that counsel should have undertaken, or show that, but for counsel's failures, there is a reasonable probability that the results of the trial would have been different.  Counsel is not required to raise futile objections.  *Wood.*

Neither deficient performance nor prejudice is shown.  Petitioner fails to show that the state court's denial of habeas relief on this issue was contrary to or involved an unreasonable application of *Strickland* or other clearly established federal law as determined by the Supreme Court.  *Williams*, 529 U.S. at 404-05.  Respondent is entitled to summary judgment on this issue.

(3)    Document Modification

Petitioner alleges that trial counsel, without his knowledge or consent, changed the punishment election form from "jury" to "judge."  The punishment election appearing in the record reflects undated handwritten changes from "judge" to "jury" to "judge."  Clerk's

---

[1]This latter exclusion is inapplicable here, as State's Exhibit 7 is unsigned.

Record at 41.  Although petitioner signed the election form, the record does not disclose which version he signed.  Trial counsel, but not petitioner, initialed the change to "judge."

After receiving the jury's verdict at the guilt-innocence phase of trial, the trial court discharged the jury and stated as follows:

> At this time the Court will order a pre-sentence investigation on the defendant and upon completion of the pre-sentence investigation I will hold a hearing and the punishment provided by law, which is in the range from not less than five nor more than life or ninety-nine years in prison and optional $10,000 fine, *will be determined by the Court.*

R.R., Vol. III, p. 30-31 (emphasis added).  Petitioner raised no objection at that time to the Court's announcement that it would determine punishment.  At the subsequent punishment hearing before the trial court, petitioner again raised no objection to the trial court determining punishment.  In being asked directly by the court whether he would cooperate with the preparation of a PSI report, petitioner himself stated, "Yes, sir."  *Id.*, Vol. IV, p. 5.  Despite these opportunities to do so, petitioner voiced no objections to the trial court determining his punishment.  Petitioner's affidavit submitted to this Court in his motion for summary judgment response (Docket Entry No. 18) does not address this particular issue.  Petitioner presents only his conclusory allegation that the jury would have assessed punishment at less than the thirty years incarceration imposed by the trial court.

By denying petitioner's application for habeas relief, the state court impliedly rejected petitioner's claim that counsel violated his Sixth Amendment rights by changing the punishment election form without his knowledge or consent.  Petitioner's bald allegation that

18

counsel unilaterally changed the form is conclusory, unsupported by the record, and fails to raise a genuine issue of material fact precluding summary judgment. Neither deficient performance nor prejudice is shown. Petitioner fails to show that the state court's denial of habeas relief on this issue was contrary to or involved an unreasonable application of *Strickland* or other clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on this issue.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner claims that appellate counsel represented both petitioner and petitioner's co-defendant during petitioner's appeal, creating an automatic conflict of interest that rendered counsel's assistance deficient and ineffective. Petitioner argues that because only one person could have been the gunman, counsel "would have to incriminate one or the other." (Docket Entry No. 18, p. 10.) As proof of prejudice, petitioner argues that instead of raising viable arguments of ineffective assistance of trial counsel, appellate counsel advised petitioner to seek state habeas relief.

The Sixth Amendment right to counsel includes the right to representation that is free from any conflict of interest. *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993). To prove a Sixth Amendment violation based on a conflict of interest arising from multiple representation, petitioner must show: (1) that counsel was acting under the influence of an actual conflict that (2) adversely affected representation. *See Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980); *see also Mickens v. Taylor*, 535 U.S. 162, 169 (2002).

An attorney labors under an actual conflict when he actively represents conflicting interests, *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); when he represents two clients whose interests in the outcome of a matter are different, *Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996); when the introduction of probative evidence or plausible arguments would significantly benefit one defendant to the detriment of another defendant who is represented by the same attorney, *United States v. Placente*, 81 F.3d 555, 558-59 (5th Cir. 1996); or when the attorney "places himself in a position conducive to divided loyalties." *Id*. at 558. Where a petitioner is able to demonstrate that his counsel labored under an actual conflict of interest, habeas relief is available if he shows that the conflict "adversely affected" the attorney's performance. *Cuyler*, 446 U.S. at 348.

Multiple representation does not automatically or necessarily create an actual conflict of interest. *United States v. Garcia-Jasso,* 472 F.3d 239, 243 (5th Cir. 2006). The first prong of *Cuyler* requires a defendant to show something more than a speculative or potential conflict. *United States v. Infante*, 404 F.3d 376, 391-92 (5th Cir. 2005). A conflict will exist only when counsel is "compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Garcia-Jasso*, 472 F.3d at 243 (internal quotation marks omitted).

The record before this Court does not establish that petitioner's appellate counsel concurrently represented petitioner and petitioner's co-defendant during petitioner's appeal,

20

and no factual basis for a conflict is shown. Even assuming the record were to show that appellate counsel also represented the co-defendant, no actual conflict of interest appears in the record. Because the jury was instructed on application of the law of parties, the identity of the actual gunman neither was, nor is, a controlling issue in this case. The record does not show that appellate counsel was compelled to compromise his duty to petitioner by choosing between or blending the divergent or competing interests of co-defendant.

Given a liberal construction, petitioner's pleadings raise a claim for ineffective assistance of appellate counsel independent of any alleged conflict of interest. To prevail on a claim of ineffective assistance of counsel without establishing a conflict, petitioner must proceed under the traditional *Strickland* standard. *Strickland*'s first prong "requir[es] that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (internal quotation marks and citation omitted). This means that "[s]olid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.* However, in assessing whether an attorney's performance was deficient, the court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, that the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689.

An appellate counsel is not required to raise baseless or unwarranted issues on appeal. Furthermore, a petitioner has no constitutional right "to compel appointed counsel to press

non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

In the instant case, petitioner argues that even though appellate counsel "knew" trial counsel was ineffective, he failed to raise it on appeal and instead told petitioner to file an application for habeas relief. The state court of appeals considered and rejected petitioner's *pro se* claim of ineffective assistance of trial counsel. *Thomas*, 2005 WL 1405731, *1 ("Appellant has filed a response contending that . . . he has been denied effective assistance of counsel both at trial and on appeal. The record before this court does not support appellant's arguments."). As the state court rejected petitioner's claim of ineffective trial counsel, appellate counsel was not deficient in failing to raise ineffective assistance of trial counsel as an issue on direct appeal.

Moreover, appellate counsel's strategy and advice were sound and reasonable. Under well-established state law, claims of ineffective assistance of trial counsel are generally raised on collateral review, not direct appeal. *See Shore v. State*, 2007 WL 4375939 (Tex. Crim. App. 2007) and cases cited therein. Petitioner shows no reason why counsel's professional judgment and advice were deficient, and, as the appellate court denied his claims of ineffective assistance of both trial and appellate counsel, shows no prejudice.

The state court on direct appeal rejected petitioner's claim of ineffective appellate counsel. By denying petitioner's application for habeas relief, the state court on collateral review impliedly also rejected the merits of petitioner's claim. Petitioner fails to show that

the state court's denial of habeas relief on this issue was contrary to or involved an unreasonable application of *Strickland* or other clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on his claim of ineffective assistance of appellate counsel.

## VII. PROSECUTORIAL MISCONDUCT

Petitioner alleges that the prosecutor unlawfully amended the indictment, presented insufficient or false evidence to support the conviction, and knowingly presented false closing arguments to the jury. Petitioner's second argument stands as a challenge to the sufficiency of the evidence, which was addressed and rejected under Section IV, *supra*. Further, petitioner's allegation that the prosecution used "false" evidence is nothing more than petitioner's disagreements with the often conflicting testimony of the witnesses, and fails to raise an issue of constitutional dimension. Nor does petitioner demonstrate that the prosecution presented false arguments to the jury during closing argument by repeatedly referring to petitioner as "the gunman." A review of the record shows that at closing argument during the guilt-innocence phase of trial, the prosecution stated that, "Basically two ways you can find Antwan Thomas guilty. If you believe beyond a reasonable doubt he was the one that actually participated, actually did the robbery himself, meaning he had the gun. Based on that last note he wrote I think that is a plausible possibility. But [the] more likely scenario [is] *he was a party to the robbery committed by Carlton Bennett*." R.R., Vol. III, p. 27 (emphasis added). The prosecution urged the jury to determine for itself whether

23

petitioner wrote the jail notes implicating himself as the gunman.   No prosecutorial misconduct is shown under these circumstances.

Nor does petitioner establish that the State violated his federal constitutional rights by amending the indictment. The State was allowed to amend the indictment under state law. *See* arts. 28.10(a), 28.11, TEX. CODE CRIM. PROC.   That the State may have failed to follow the procedural aspects of these state law provisions would not raise a federal constitutional issue. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Nor is an independent federal due process issue shown; the federal guarantee of a grand jury indictment has not been applied to the states through the Fourteenth Amendment. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Brown v. Wainwright*, 576 F.2d 1148, 1149 (5th Cir. 1978).

Petitioner fails to show that the state court's denial of habeas relief was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05.  Respondent is entitled to summary judgment on this issue.

## VIII.   TRIAL COURT ERROR

Petitioner claims that the trial court erred or abused its discretion by:

(1)    overruling petitioner's hearsay objections;

(2)    allowing the State to present inflammatory evidence, which denied him a fair and impartial trial; and

(3)    ignoring appellate counsel's conflict of interest.

Under Section VI, *supra*, this Court rejected petitioner's claim that appellate counsel had an actual conflict of interest. Thus, petitioner's claim that the trial court ignored appellate counsel's conflict is without factual basis or legal merit.

In affirming the conviction under appellate counsel's *Anders* brief, the state court of appeals found no reversible error in the record. *Thomas*, 2005 WL 1405731, *1 ("Following the procedures outlined in *Anders,* we have independently reviewed the record, and we agree that the appeal is without merit."). The court of appeals further expressly overruled petitioner's *pro se* complaints regarding the trial court's evidentiary rulings. *Id.* ("Appellant has filed a response contending that the 'prosecutor abused its discretion by entering insufficient evidence,' that the trial court erred 'in overruling appellant's objection to hearsay testimony pertaining to insufficient evidence,' and that he has been denied effective assistance of counsel both at trial and on appeal. The record before this court does not support appellant's arguments.").

It is not the role of federal habeas courts to review the correctness of state court interpretations and applications of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004). Because the state courts both impliedly and expressly found the complained-of evidence admissible, this Court cannot reconsider those determinations. Even assuming the trial court erred under state law in admitting the evidence, petitioner fails to demonstrate a constitutional violation that had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Petitioner fails to show that the state court's denial of habeas relief was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on this issue.

## IX.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 15) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 26 day of February, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE